1
2
3
4
5
6
7
8        **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LANCE WILLIAMS,                           No.  2:18-CV-0740-MCE-DMC-P

12                 Plaintiff,

13         v.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14   D. JUST, et al.,

15                 Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983. Pending before the Court are: (1) defendant Villescaz's motion for summary

19   judgment (ECF N0. 47); (2) plaintiff's opposition[1] (ECF No. 51); and (3) defendant's reply (ECF

20   No. 53).

21

22            **I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

23            This action proceeds on plaintiff's original complaint.  Plaintiff names the

24   following as defendants: (1) officer D. Just; and (2) officer T Villescaz. Plaintiff claims that,

25   while he was an inmate at California State Prison, Solano, he was physically attacked by

26   defendant Just, then denied medical care by defendant Villescaz.

27   _____

28            [1]      Plaintiff's opposition contains multiple, unclear, run-on sentences. The following
     findings reflect the Court's best interpretation of plaintiff's writings.

1

1          According to plaintiff, on May 24, 2015, he was being escorted from the law

2   library. He was fitted with wrist chain cuffs that would permit him to carry books in his hands.

3   ECF No. 1, pg. 3. At some point, officer Just approached plaintiff and demanded that he be cuffed

4   with his arms behind his back, requiring that plaintiff tuck his materials under his arms. Id. This

5   caused the cuffs to dig into plaintiff wrists and he requested to see a nurse. Id. at 4. Officer Just

6   eventually took plaintiff to see a nurse and "slammed" him into a chair at the nurse's office. Id.

7   Officer Just then apparently threatened the nurse, prompting her determination that plaintiff did

8   not require medical care. Thereafter Just proceeded to move plaintiff to his cell. Id. In

9   transporting plaintiff, Just grabbed plaintiff by the neck, squeezing "extremely hard," and dragged

10  plaintiff to his cell. Id. at 5. Once at his cell, officer Just then allegedly pushed plaintiff against

11  the wall and punched him in the back of the head. Id. This event left plaintiff in pain, gave him a

12  migraine, and left him "feeling suicidal." Id.

13          When officer Villescaz approached his cell for an unrelated matter, plaintiff

14  immediately asked her to call for medical assistance. Villescaz then apparently told plaintiff to

15  stop submitting administrative grievances, that Just did not hit plaintiff that hard, and then she left

16  laughing without calling for medical attention. Plaintiff was eventually taken to a hospital for

17  "neck trauma, blackouts, severe headaches and other injuries." Id. at 6.

18          On April 3, 2018, plaintiff filed a § 1983 civil rights complaint against defendants

19  Just and Villescaz. ECF No. 1. Plaintiff alleges that defendant Just violated his constitutional

20  rights by physically attacking him. Plaintiff also alleges that defendant Villescaz violated

21  plaintiff's rights by being deliberately indifferent to his medical needs.

22          On August 26, 2019, defendant Villescaz[2] filed this motion for summary judgement. ECF

23  No. 47. On September 16, 2019, plaintiff filed an opposition to Villescaz's motion for summary

24  judgement. ECF No. 51. On September 23, Villescaz submitted a reply to plaintiff's opposition.

25  ECF No. 53. The Court now reviews defendant's motion for summary judgement.

26  ///

27  _____

28          [2]        Defendant Just does not join in the motion and has not filed a separate motion for
    summary judgment.

## II. THE PARTIES' EVIDENCE

### A.  Defendant's Evidence

Defendant's motion for summary judgement is supported by the following evidence: (1) Statement of Undisputed Material Facts (SUMF)(ECF 47-3); (2) Declaration of A. Petty; (3) Declaration of E. Frijas; (4) Declaration of L. O'Brian; (5) Declaration of J. Spaich; and (6) Declaration of Jeremy Duggan. Defendant's SUMF claims the following:

| Undisputed Material Facts | Supporting Evidence |
|---|---|
| 1. In his complaint, Plaintiff Williams alleges that on May 24, 2015, Defendant Just, a correctional officer, escorted Plaintiff Williams from the law library to his cell at CSP-Solano. | 1. Compl. 3-5, ECF No. 1. |
| 2. In his complaint, Plaintiff Williams further alleges that on May 24, 2015, when he and Defendant Just reached the cell, Just punched Williams in the back of the head causing injuries to Williams. | 2. Compl. 5, ECF No. 1. |
| 3. In his complaint, Plaintiff Williams further alleges that on May 24, 2015, correctional officer Villescaz came to his cell, that Williams requested that she call a nurse or man down for him, and that Villescaz did not do so. | 3. Compl. 5, ECF No. 1. |
| 4. The California Department of Corrections and Rehabilitation (CDCR) provides its inmates with a comprehensive administrative grievance process in which inmates may appeal any decision, action, condition, policy or omission, made by the Department or its staff, which the inmate believes has had a material adverse effect on their welfare. | 4. Ramos Decl. ¶ 3; Petty Decl. ¶ 2; O'Brian Decl. ¶ 2; Frijas Decl. ¶ 2; Cal. Code Regs. tit. 15, § 3084.1. |

| | |
|---|---|
| 5. The custody grievance process has three levels, and a final decision at the third level exhausts the appeal. | 5. Ramos Decl. ¶ 4; Petty Decl. ¶ 6; O'Brian Decl. ¶ 6; Frijas Decl. ¶ 6; Cal. Code Regs. tit. 15, § 3084.1(b). |
| 6. Plaintiff Williams sent his complaint in this matter to the Court on March 29, 2018, and the complaint was filed on April 3, 2018. | 6. Compl. 1, 37, ECF No. 1. |
| 7. Plaintiff Williams's interrogatory responses state that he exhausted his administrative remedies in this matter as to his claim against Defendant Just through grievance log number SOL-15-01018. | 7. Plaintiff's Responses to Defendants' First Set of Interrogatories, Response to Interrogatory No. 2 (Duggan Decl. Ex. P.) |
| 8. Plaintiff Williams's interrogatory responses state that he exhausted administrative remedies in this matter as to his claims against Defendant Villescaz through grievance log numbers CSP-S-15-07078, SAC-O-17-04402, RJD-A-17-07281, RJD-17-06533, CSP-S-18-00043, and SOL-17-02714. | 8. Plaintiff's Responses to Defendants' First Set of Interrogatories, Response to Interrogatory No. 3 (Duggan Decl. Ex. P.) |
| 9. Between May 24, 2015, and March 29, 2018, Plaintiff Williams was aware of, and used CDCR's inmate grievance process, filing at least thirty grievances in that time period. | 9. Plaintiff's Responses to Defendants' First Set of Interrogatories, Response to Interrogatories No. 1-2 (Duggan Decl. Ex. P.); Inmate/Parolee Appeals Tracking System results for Plaintiff Williams 2-5 (Petty Decl. Ex. A). |
| 10. Grievance log number CSP-S-15-07078 filed at California State Prison, Solano, was filed by another inmate, and does not relate to Williams. | 10. Petty Decl. ¶ 16. |
| 11. There is a typographical error in a response regarding appeal log number CSP-S-17-02714, dated February 3, 2017, that mentions log number CSP-S-15-07078. The number cited in that response should be CSP-S-15-01018, not CSP-S-15-07078. | 11. Petty Decl. ¶ 16. |

| | |
|---|---|
| 12. In grievance log number CSP-S-15-01018, received by CDCR on May 27, 2015, Plaintiff Williams asserted that Defendant Just assaulted Williams in his cell on May 24, 2015. | 12. Inmate/Parolee Appeal log number CSP-S-15-01018 (Petty Decl. Ex. B, at 1-2). |
| 13. Grievance log number CSP-S-15-01018 did not mention Defendant Villescaz, nor did it mention Williams's claim that Villescaz refused Williams's request for medical assistance. | 13. Inmate/Parolee Appeal log number CSP-S-15-01018 (Petty Decl. Ex. B, at 1-2). |
| 14. In the second level response to grievance log number CSP-S-15-01018, the reviewer states that Williams "states his head is in pain and Officer Just wouldn't take him to medical." | 14. Second Level Response to Inmate/Parolee Appeal log number CSP-S-15-01018 (Petty Decl. Ex. B, at 3). |
| 15. Neither grievance log number CSP-S-15-01018, nor the responses thereto, mention the claim that Villescaz refused to call for medical assistance for Williams. | 15. Inmate/Parolee Appeal log number CSP-S-15-01018 and responses thereto (Ramos Decl. Ex. M, at 1-14). |
| 16. Grievance log numbers RJD-17-06533 and SOL-17-02714 are assigned to the same grievance, which was first filed at Richard J. Donovan state prison and given the log number RJD-17-06533, then sent to California State Prison, Solano for further processing under log number SOL-17-02714. | 16. Petty Decl. ¶ 17; Frijas Decl. ¶ 16. |
| 17.Grievance log number SOL-17-02714 asserted that Defenant Villescaz came to Williams's cell on May 24, 2015, that Williams asked her to call for medical assistance for his injuries, and that she did not call for medical assistance. | 17.Inmate/Parolee Appeal log number SOL-17-02714 (Petty Decl. Ex. D, at 2, 4). |
| 18.Grievance log number SOL-17-02714was not exhausted before March 29, 2018, and indeed was never exhausted. | 18.Inmate/Parolee Appeal log number SOL-17-02714 and responses thereto (Ramos Decl.Ex. O, at 1-16). |
| 19.CDCR officials received grievance log number SOL-17-02714 on November 8, 2017. | 19.Inmate/Parolee Appeal log number SOL-17-02714 (Ramos Decl. Ex. O, at 2). |

| | |
|---|---|
| 20. Grievance log number SOL-17-02714 was cancelled at the first level as untimely. | 20. First-level response to Inmate/Parolee Appeal log number SOL-17-02714 (Ramos Decl. Ex. O, at 13). |
| 21. Williams appealed the first-level cancellation of grievance log number SOL-17-02714 in grievance log number CSP-S-18-00043. | 21. Inmate/Parolee Appeal log number CSP-S-18-00043 (Petty Decl. Ex. F, at 4-5). |
| 22. In a second-level response granting grievance log number CSP-S-18-00043 dated January 16, 2018, grievance log number SOL-17-02714 was reinstated for second-level review. | 22. Second-level response to Inmate/Parolee Appeal log number CSP-S-18-00043 (Petty Decl. Ex. F, at 1, 3). |
| 23. The second-level response to grievance log number SOL-17-02714, signed in February, 2018 (and mistakenly dated February 2017) found that staff did not violate CDCR policy with respect to the issues appealed. | 23. Second-level response to Inmate/Parolee Appeal log number SOL-17-02714 (Ramos Decl. Ex. O, at 6-7). |
| 24. Williams appealed grievance log number SOL-17-02714 to the third level, and on June 8, 2018, the grievance was cancelled at the third level of review as untimely. | 24. Third-level response to Inmate/Parolee Appeal log number SOL-17-02714 (Ramos Decl. Ex. O, at 1). |
| 25. At his deposition, Williams argued that he did not have to appeal grievance log number SOL-17-02714 to the third level to exhaust. | 25. Williams Depo. Tr. 39:15-40:11 (Duggan Decl. Ex. Q). |
| 26. The second-level response to grievance log number SOL-17-02714 states "Appellant alleges Officer Villescaz failed to call a medical code on his behalf after claiming to of been assaulted by Officer Just. A full investigation was already conducted on the alleged staff misconduct (see appeal CSP-S-15-07078)." | 26. Second-level response to Inmate/Parolee Appeal log number SOL-17-02714 (Ramos Decl. Ex. O, at 6). |

| | |
|---|---|
| 27. The second-level response to grievance log number SOL-17-02714 states "If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review." | 27. Second-level response to Inmate/Parolee Appeal log number SOL-17-02714 (Ramos Decl. Ex. O, at 7). |
| 28. The second-level response to grievance log number SOL-17-02714 informed Williams that "your appeal was referred for an appeal inquiry," and that "[a]llegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process." | 28. Second-level response to Inmate/Parolee Appeal log number SOL-17-02714 (Ramos Decl. Ex. O, at 6). |
| 29. Grievance log numbers RJD-A-17-07281 and CSP-S-18-00043 are both assigned to the same grievance, which was first filed at Richard J. Donovan state prison and given the log number RJD-A-17-07281, then sent to California State Prison, Solano for further processing under log number SOL-18-00043. | 29. Petty Decl. ¶ 17; Frijas Decl. ¶ 16. |
| 30. Grievance log number SAC-O-17-04402 appealed the cancellation of grievance log number SOL-17-02526. | 30. Inmate/Parolee Appeal log number SAC-17-04402 (Ramos Decl. Ex. N, at 3, 5). |
| 31. Grievance log number SOL-17-02526 sought to have certain charges from Williams's trust account removed. | 31. Inmate/Parolee Appeal log number SOL-17-02526 (Ramos Decl. Ex. N, at 3, 5). |
| 32. Grievance log number SOL-17-02526 did not mention Defendant Villescaz or any allegation that Williams was denied medical care. | 32. Inmate/Parolee Appeal log number SOL-17-02526 (Ramos Decl. Ex. N, at 3, 5). |
| 33. Grievance log number SAC-O-17-04402 was sent to CSP-SOL for processing under log number CSP-S-17-02873. | 33. Petty Decl. ¶ 17. |

| | |
|---|---|
| 34.Grievance log number CSP-S-17-02873 was processed to the third level, and was denied at the third level on April 30,2018. | 34.Third-level response to Inmate/Parolee Appeal log number CSP-S-17-02873 (Ramos Decl. Ex. N, at 1-2). |

## B. Plaintiff's Evidence

Plaintiff's motion for summary judgement is supported by the following exhibits:

Exhibit A                    Second level response to Appeal # CSP-S-15-01018. ECF No. 51, pgs. 13-18.

Exhibit B                    Inmate interview for allegation of excessive force. ECF No. 51, pgs. 19-20.

Exhibit C                    Second level response to Appeal # CSP-S-17-02714. ECF No. 51, pgs. 21-23.

Exhibit D                    Denial of Appeals RJD-17-06533 and SOL-17-02714. ECF No. 51, pgs. 24-25.

Exhibit E                    CDCR rules violation report of Williams (plaintiff) dated December 8, 2015. ECF No. 51, pgs. 26-30

Exhibit F                    Request by plaintiff for third level decision for log # CSP-5-15-07078. ECF No. 51, pgs. 31-33.

Exhibit G                    First level administrative appeal for excessive force grievance against officer Just. CSP-S-15-07078.

## III. STANDARD FOR SUMMARY JUDGEMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the

1  moving party

2     . . . always bears the initial responsibility of informing the district court of
       the basis for its motion, and identifying those portions of "the pleadings,
3      depositions, answers to interrogatories, and admissions on file, together
       with the affidavits, if any," which it believes demonstrate the absence of a
4      genuine issue of material fact.

5     Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

6        If the moving party meets its initial responsibility, the burden then shifts to the

7  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

8  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

9  establish the existence of this factual dispute, the opposing party may not rely upon the

10 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

11 form of affidavits, and/or admissible discovery material, in support of its contention that the

12 dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

13 opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

14 affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

15 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

16 Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

17 return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

18 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

19 simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

20 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

21 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

22 claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

23 of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

24      In resolving the summary judgment motion, the court examines the pleadings,

25 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

26 See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

27 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

28 court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISUCSSION

Defendant argues that the Prison Litigation Reform Act (PLRA) required plaintiff to exhaust his administrative remedies through the grievance process available from the California Department of Corrections and Rehabilitation (CDCR) before filing this lawsuit, and that plaintiff failed to properly do so. Plaintiff contends that he diligently pursed his administrative remedies and that, to the extent he failed, it was because he was purposefully deprived of such remedies. The Court ultimately finds that: (1) plaintiff had administrative remedies available to him throughout the relevant timeframe; (2) plaintiff was required to exhaust those remedies prior to filing this action; and (3) plaintiff failed to properly exhaust his administrative remedies. Therefore, defendant's motion for summary judgement should be granted.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in first instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate.  See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90. Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit. 15, § 3084.2(a). Inmates are must file grievances within thirty calendar days of the incident in question. Cal Code Regs. tit. 15, § 3084.8(b)(1).  These regulations also require the prisoner to proceed through three levels of appeal.  See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not

appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).

**A.    Availability of Remedies**

Defendant argues that plaintiff had an administrative remedy available to him. Specifically, defendant states that:

> CDCR provides its inmates with a comprehensive administrative appeals process in which inmates may appeal a decision, action, condition, policy or omission, made by the Department or its staff, which the inmate believes has had a material adverse effect on their welfare. (UMF No. 4.) Plaintiff was aware of and used CDCR's administrative appeals process. (UMF No. 9.) Accordingly, there is no dispute that Plaintiff had an administrative remedy available to him.

ECF No. 47-2, pg. 4

Plaintiff argues that:

> Plaintiff did not have administrative remedies available to him because it was made unavailable by defendants during plaintiff['s] attempts to exhaust his remedies on the appeal claims against defendant T. Villescaz for deliberate indifference.

ECF No. 51, pgs. 2-3.

Here, the Court agrees with defendant. As defendant notes, prisoners in CDCR facilities are provided with "a comprehensive administrative grievance process in which inmates may appeal any decision, action, condition, policy or omission, made by the Department or its staff, which the inmate believes has had a material adverse effect on their welfare." ECF No. 47-3, pg. 2. It appears that plaintiff was in fact aware of the grievance process and utilized it for his current claims. The same administrative process was utilized against defendant Just and claims against Just proceed before this Court without issue or challenge based on failure to exhaust.

Also, plaintiff responded to defendant's interrogatory No. 4 as follows:

Interrogatory No. 4          Did you fully exhaust an inmate appeal for

| 1 | each of your claims against each Defendant in this matter through the third level of review before April 3, 2018? |
| 2 | |
| 3 | Response                          Yes |
| 4 | ECF No. 47-8, pg. 7. |

This response demonstrates that plaintiff did in fact utilize the CDCR grievance procedures. Therefore, despite plaintiff's assertions in his opposition, the dispute here does not appear to be whether plaintiff had an administrative remedy available to him (he did), but instead whether that remedy was properly exhausted.

**B.** **Requirement to Exhaust**

The Court also recognizes that plaintiff's § 1983 action against Villescaz requires an exhaustion of the CDCR's administrative grievance procedures before it can proceed. As discussed above, CDCR regulations require a prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level is not appealable and concludes a prisoner's departmental administrative remedy. See id. Therefore, assuming defendant satisfies her initial burden of showing non-exhaustion of plaintiff's remedies, plaintiff will need to demonstrate that he was denied a proper opportunity to exhaust such remedies. See Albino, 747 F.3d at 1172.

**C.** **Failure to Exhaust**

The crux of defendant's motion is the contention that plaintiff failed to adequately exhaust his administrative remedies such that plaintiff's action against Villescaz should be dismissed. At issue is whether the following administrative grievances satisfied plaintiff's exhaustion requirements[3]:

///

///

///

_____

[3]     The following chart comes from defendant's motion to dismiss. ECF No. 47-2, pgs. 10-11. Though parties dispute whether these administrative appeals satisfied plaintiff's exhaustion requirements, the chronology of plaintiff's appeal process does not appear to be in dispute.

13

| Exhibit(s) | Institution Log Number(s) | Third-Level Log Number | Disposition |
|---|---|---|---|
| B, M | CSP-S-15-01018 [mistaken as "CSP-S-15-07078" due to alleged typographical error | 1501245 | Denied at the third level Feb. 5, 2016 |
| D, H, O | SOL-17-02714; RJD-A-17-06533 | 1803688 | Cancelled at the third level June 8, 2018 |
| F, I | CSP-S-18-00043 | | Granted at the second level January 4, 2018 |
| E, K, N | SAC-17-04402; SOL-17-02873; RJD-17-06602 | 1801354 | Denied at the third level April 30, 2018 |
| Not attached | CSP-S-15-07078 | | [Grievance does not relate to plaintiff's claims] |

1.    Grievance CSP-S-15-07078

Defendant argues that grievance CSP-S-15-07078 did not satisfy plaintiff's exhaustion requirement because the grievance was filed by another inmate and does not related to plaintiff's claims. Specifically:

> Grievance log number CSP-S-15-07078 was filed by another inmate, and does not relate to Plaintiff Williams. (UMF No. 10.) Williams cites that number in his interrogatory responses because that number is listed in a response regarding appeal log number CSP-S-17-02714. (UMF No. 11.) That listing was a typographical error. The log number that should have been listed was CSP-S-15-01018. (Id.) Accordingly, log number CSP-S-15-07078 did not exhaust as to Williams's claims here.

ECF No. 47, pg. 5

Plaintiff argues that this typographical error was an "art of fraud" on the part of the defendants and that it clearly illustrates that plaintiff satisfied his exhaustion requirements for his claim against Villescaz through grievance CSP-S-15-01018. ECF No. 51, pgs. 6-7.

Here, the Court agrees with defendant insofar as grievance CSP-S-15-07078 does not satisfy plaintiff's exhaustion requirements. As the record shows, CSP-S-15-07078 was filed by another inmate and does not relate to the conduct at issue in this action. ECF No. 47-4, pgs. 4, 32-37. Plaintiff offers no convincing evidence or argument to the contrary. Therefore, this

grievance cannot be considered to have exhausted plaintiff's administrative grievance process. To the extent that plaintiff argues that his exhaustion requirement was nonetheless satisfied through grievance CSP-S-15-01018, the Court shall next address the grievance.

2.   Grievance CSP-S-15-01018

Defendant argues that grievance CSP-S-15-01018 did not exhaust because it did not mention Villescaz's alleged refusal to provide plaintiff with medical assistance. Specifically:

> . . .The grievance did not mention Defendant Villescaz, nor did it mention Williams's claim that Villescaz refused Williams's request for medical assistance. (UMF No. 13.)
>
> * * *
>
> During the grievance process, Williams asserted that after that alleged assault, *Defendant Just* refused to take Williams to medical. (UMF No. 14.) Williams did not make any such claim as to *Defendant Villescaz* at any point in the grievance process. (UMF No. 15.) Accordingly, the grievance did not exhaust as to Williams's claim against Villescaz. See, e.g., Lira v. Herrera, 427 F.3d 1164, 1169 n.6 (9th Cir. 2005) ("only exhausted claims can be litigated").

ECF No. 47-2, pgs. 5-6.

Plaintiff argues that he addressed his claims against defendant Villescaz during his face-to-face interview with Sergeant F. Clay on June 22, 2015. Plaintiff apparently also brought up Villescaz during two video interviews discussing the incident. ECF No. 51, pgs. 7-8. According to plaintiff, it was "through no fault of plaintiff" that his interviewers did not write down plaintiff's complaints against Villescaz down. Id. at 8. Also, plaintiff argues that CSP-S-15-01018 did in fact address his claims against Villescaz. According to plaintiff:

> [L]og no. 01018 had a 602-A continuation sheet attached to it that mention[ed] claims against T. Villescaz that has been removed by prison official not by plaintiff, the first page of plaintiff's log no. 01018 section A ends with a hyphen showing plaintiff's claim was continuing, a thorough review of all plaintiff's appeals that have this hyphen have a 602-A attachment with it, this art of fraud by defendants is a genuine material fact dispute that log no. 01018 did not mention T. Villescaz. (See: Exhibit G).

ECF No. 51, pgs. 7-8.

///

///

15

Here, the Court agrees with defendant. "The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Stephen v. Alvarez, No. 14-cv-01245-SI, 2016 U.S. Dist. LEXIS 74186, at *12 (N.D. Cal. June 7, 2016) (referencing Jones v. Bock, 549 U.S. 199, 218 (2007)). As defendant notes, California prisons require that the inmate "list all staff members involved," and that the inmate "state all facts known and available to him/her regarding the issue being appealed." Cal. Code Regs. tit. 15, § 3084.2(a)(3), (a)(4) (2016). Defendant presents evidence which shows that CSP-S-15-01018 does not reference Villescaz or her alleged denial of medical care. See ECF No. 47-4, pgs. 11-18. It is unclear why plaintiff did not reference Villescaz's conduct in this grievance, considering that her conduct occurred on the same day as Just's alleged attack and plaintiff knew Villescaz's name at the time. ECF No. 1, pg. 5 ("upon coming to my senses . . . a cell search receipt was left with the name Officer T. Villescaz who came to my cell . . .") Thus, defendant has satisfied her initial burden of showing plaintiff's lack of exhaustion and it is now plaintiff's obligation to provide evidence which counters that showing. However, here, plaintiff has provided no such evidence.

Despite plaintiff's unsupported allegations that his interviewers failed to include his references to Villescaz in his complaint, plaintiff was the one who ultimately wrote out and submitted grievance CSP-S-15-01018. As is clear from the papers, plaintiff did not mention Villescaz or her alleged misconduct. Also, to the point that plaintiff claims that CDCR employees deliberately conspired to remove plaintiff's references to Villescaz, the Court is similarly unconvinced. At the summary judgement stage, the Court may consider the evidence presented to determine whether there is a genuine dispute, but it may not make that determination based solely on a party's blanket allegations. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. Plaintiff's claim that prison employees purposefully removed a continuation sheet describing Villescaz's misconduct is just that, a blanket allegation unsupported by evidence. Plaintiff supports his "art of fraud" argument with his opposition's Exhibit G. However, that exhibit is simply a photocopy of CSP-S-15-01018. As discussed above, CSP-S-15-01018 does not reference Villescaz and there is nothing evident in the form that would suggest that a prison

employee manipulated its contents. Therefore, CSP-S-15-01018 did not satisfy plaintiff's exhaustion requirements.

### 3. Grievance RJD-17-06533/SOL-17-02714

It appears undisputed that:

> Grievance log numbers RJD-17-06533 and SOL-17-02714 are both assigned to the same grievance. (UMF No. 16.) The grievance was first filed at Richard J. Donovan state prison and given the log number RJD-17-06533, then sent to CSP-SOL for further processing under log number SOL-17-02714. (Id.) The grievance asserted that Villescaz came to Williams's cell on May 24, 2015, that Williams asked her to call for medical assistance for his injuries, and that she did not call for medical assistance. (UMF No. 17.). The grievance was not exhausted before Williams filed suit, and indeed was never exhausted. (UMF No. 18).

ECF No. 47-2, pg. 6.

Defendant argues that the RJD/SOL grievances did not satisfy plaintiff's exhaustion requirement because: (1) plaintiff initiated this lawsuit before the grievance was cancelled at the third level; and (2) regardless, the grievance was untimely. Defendant states:

> First, the June 8, 2018, cancellation took place after Williams filed this lawsuit in March 2018. Accordingly, processing of the grievance had not been completed when Williams filed suit, and therefore administrative remedies were not exhausted. See, e.g., McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2001) ("a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation").
> Second, the June 8, 2018 cancellation did not exhaust administrative remedies. Cal. Code Regs. tit. 15, § 3084.1(b) ("[A] cancellation or rejection decision does not exhaust administrative remedies.") As the Supreme Court has held, a prisoner cannot exhaust administrative remedies by filing an untimely grievance. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006) ("This case presents the question whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal. We hold that proper exhaustion of administrative remedies is necessary.") Under CDCR's regulations, Williams's grievance was two years late. (UMF No. 19; Cal. Code Regs. tit. 15, § 3084.8(b)(1).) "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Williams did not comply with CDCR's deadlines, and accordingly did not exhaust through grievance log number RJD-17-06533 and SOL-17-02714.

ECF No. 47-2, pgs. 6-7.

///

///

Plaintiff argues that he was free to file his administrative appeals, even after the thirty-day period. ECF No. 51, pg. 9. Alternatively, plaintiff argues that he did in fact file an administrative appeal within thirty days (though it is unclear what he is referring to). Id. Also, plaintiff claims that on February 3, 2017, his administrative remedies were made unavailable such that he was not required to wait until he received a third level response to file the current lawsuit. Id.

The Court agrees with defendant. It is apparent from the record that plaintiff submitted these administrative appeals in an untimely manner and thus did not exhaust his remedies. Plaintiff claims that on May 24, 2015, Villescaz failed to procure medical aid for plaintiff. However, plaintiff did not submit the earlier of the two appeals, RJD-A-17-6533, until October 9, 2017, more than two years after the incident. See ECF No. 47-5, pg. 19. The grievance was eventually reinstated and analyzed at the second level where that review body found that CDCR staff did not violate policy. See ECF No. 47-4, pgs. 61-66; see also ECF No. 51, pgs. 21-23. However, at the subsequent third level, the grievance was again determined to be untimely and cancelled. To the extent plaintiff argues that the second-level reinstatement of his appeal means that his grievance was in fact exhausted, the Court here disagrees, noting:

> Because plaintiff's appeal was not timely filed, prison officials' subsequent cancellation of the third level appeal was proper. Section 3084.1(b) provides that "[a]ll lower level reviews are subject to modification at the third level of review," and "[e]rroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal." Cal. Code Regs. tit. 15, § 3084.6(a)(5). In addition, "a cancellation or rejection decision does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).
>
> Vaughn v. Hood, No. 2:14-cv-2235 MCE KJN P, 2015 U.S. Dist. LEXIS 111228, at *21 (E.D. Cal. Aug. 20, 2015)

Thus, the third level cancelation here did not exhaust plaintiff's administrative remedies. Since plaintiff did not exhaust his administrative remedies, his current action is improper. As discussed above, failure to properly exhaust all administrative remedies bars commencement of a civil action under § 1983; and compliance with administrative deadlines is required for exhaustion to be proper. See 42 U.S.C. § 1997e(a); see also Woodford, 548 U.S. at

90.

4.     Grievance SOL-17-02714

Defendant argues that grievance SOL-17-02714 was not exhausted after the second-level response. Defendant states that:

> At his deposition, Williams argued that he did not have to appeal grievance log number SOL-17-02714 to the third level to exhaust. (UMF No. 25.) Williams bases his argument on the following statement from the second-level response to grievance log number SOL-17-02714:

> Appellant alleges Officer Villescaz failed to call a medical code on his behalf after claiming to of been assaulted by Officer Just. A full investigation was already conducted on the alleged staff misconduct (see appeal CSP-S-15-07078).

> (UMF Nos. 25-26.)

> As stated above, Williams's previous grievance did not, in fact, exhaust as to the claim against Villescaz. The reference to CSP-S-15-07078 is a typographical error, the grievance that was meant to be listed is CSP-S-15-01018. (UMF No. 11.) Grievance log number CSP-S-15-01018 did not address any conduct by Villescaz, and accordingly did not exhaust as to the claims against her. See supra § II.C.2.

> The statement in the second-level response did not mean that Williams's administrative remedies were exhausted. The Ninth Circuit has held that "a prisoner need not press on to exhaust further levels of review once he has . . . been reliably informed by an administrator that no remedies are available." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005). The second level response here did not so inform Williams. First, it states that an investigation was conducted on the "alleged staff misconduct." (UMF No. 26.) "[A]lleged staff misconduct" refers to the alleged assault by officer Just described in the previous sentence, not the claim against Villescaz. That reference is confirmed by the citation to CSP-S-15-07078 (intended to be CSP-S-15-01018), which dealt with the allegations of assault against Just. See supra § II.C.2.

> Second, even if the second-level response statement were referring to an investigation into whether Villescaz called for medical care for Williams (and it is not), the second level response states only that an investigation has been conducted. It does not state that no administrative remedies remain available. Indeed, the response states the opposite, confirming that Williams had additional administrative remedies available:

> If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review.

> (UMF No. 27.)

19

In fact, Williams pursued that remedy, albeit after filing suit in this matter. (UMF No. 24.) Williams was not "reliably informed" that no further administrative remedies were available.

ECF No. 47-2, pgs. 7-8

Plaintiff argues that there was no need to appeal SOL-17-02714 to the third level since second-level review communicated to him that his appeals process had been exhausted. Plaintiff relies on the following statement made at his second-level determination:

Appellant alleges Officer Villescaz failed to call a medical code on his behalf after claiming to of been assaulted by Officer Just. A full investigation was already conducted on the alleged staff misconduct (see appeal CSP-S-15-07078).

ECF No. 51, pg. 22.

Plaintiff also argues that, under the case <u>Brown v. Valoff</u>, 422 F.3d 926 (9th Cir. 2005), plaintiff's grievance was a staff complaint and the second-level determination that an investigation had been conducted was sufficient to imply an exhaustion of his administrative remedies. ECF No. 51, pgs. 10-11. In <u>Brown</u>, a prisoner filed a civil rights action against the prison and contested the prison's motion to dismiss alleging that plaintiffs failed to exhaust administrative remedies. The court held that the prisoner satisfied the exhaustion requirements of the PLRA because the prison did not establish that once it had ordered an investigation into a correction officer's alleged misconduct through the separate "staff complaint" process, it had any remaining authority to act through the grievance procedure. <u>Brown</u>, 422 F.3d at 937-38. Bulletin postings and wording in the prison manual ultimately led the court to conclude that no further relief was in fact "available" through the appeals process. <u>Id.</u>

The Court agrees with defendant that SOL-17-02714 did not satisfy the exhaustion requirement. First, the second-level determination did not communicate that plaintiff was not required to seek third-level review to properly exhaust. The Ninth Circuit has held that "a prisoner need not press on to exhaust further levels of review once he has . . . been reliably informed by an administrator that no remedies are available." <u>Brown</u>, 422 F.3d at 935. Here, the second-level determination found that "staff did not violate CDCR policy . . ." ECF No. 51, pg. 22. It did not notify plaintiff that their ruling exhausted plaintiff's administrative remedies. In

1    fact, at the end of the document, the determination states:

2         If you wish to appeal the decision and/or exhaust administrative remedies,
         you must submit your staff complaint appeal through all level of appeal
3         review up to, and including, the Secretary's/Third Level of Review. Once
         a decision has been rendered at the Third Level, administrative remedies
4         will be considered exhausted.

5         ECF No. 51, pg. 23.

6         Thus, plaintiff was informed of the necessity to file an appeal to the third level of

7    review and it cannot plausibly be argued that plaintiff was reliably informed that "no remedies are

8    available." Brown, 422 F.3d at 935

9         Second, plaintiff's reliance on Brown for the assertion that a staff complaint

10   investigation satisfies the exhaustion requirement is outdated. As defendant notes in her motion:

11        Since the decision in Brown, CDCR has amended its regulations
         with regard to staff complaints. Specifically, since January 2011, a staff
12        complaint is not a separate procedure, as contemplated in Brown, but
         instead "[a] staff complaint filed by an inmate or parolee shall be
13        processed as an appeal pursuant to [Cal. Code Regs. tit. 15 § 3084 et
         seq.]." Cal. Code Regs. tit. 15, § 3084.9 (history note 1 providing date
14        section became operative). Depending on the allegations, staff complaints
         may be sent for an internal affairs investigation, or an appeal inquiry may
15        be conducted by the grievance reviewer. Cal. Code Regs. tit. 15, §
         3084.9(i)(3)(A-B) (stating that for healthcare grievances, staff shall
16        conduct a confidential inquiry where the grievance is not referred to
         outside investigation). A staff complaint, just as with any other appeal, is
17        "subject to a third level of review . . . before administrative remedies are
         deemed exhausted." Cal. Code Regs. tit. 15, § 3084.1(b). Further, in that
18        third-level review, "[a]ll lower level reviews are subject to modification."
         Cal. Code Regs. tit. 15, § 3084.1(b). Accordingly, officials still have
19        authority to act through the grievance process after the grievance has been
         characterized as a staff complaint.
20
         ECF No. 47-2, pgs. 8-9.
21
22        The alleged misconduct which drives this action occurred in 2015, well after the

23   CDCR amended its regulations regarding staff complaints. Therefore, plaintiff's administrative

24   remedies, including staff complaints, were all subject to a three-level tier of review. As described

25   above, plaintiff's second-level determination explicitly informed him of this requirement. Despite

26   this, plaintiff elected not to appeal the second-level determination. Therefore, SOL-17-02714 did

27   not satisfy plaintiff's exhaustion requirements.

28   ///

1     5.     Grievance RJD-A-17-07281/CSP-S-18-00043

2          It appears undisputed that:

3               Grievance log numbers RJD-A-17-07281 and CSP-S-18-00043 are
           assigned to the same grievance. (UMF No. 29.) It was first filed at Richard
4          J. Donovan state prison and given the log number RJD-A-17-07281, then
           sent to CSP-SOL for further processing under log number CSP-S-18-
5          00043. (*Id*.) The grievance appealed the cancellation of grievance log
           number CSP-S-17-02714, discussed above, which had been cancelled as
6          untimely. (UMF No. 21.) On January 16, 2018, log number CSP-S-18-
           00043 was granted, and CSP-S-17-02714 was reinstated for further
7          processing at the second level. (UMF No. 22.)

8          ECF No. 47-2, pg. 9.

9          Defendant argues simply that "CSP-S-18-00043 did not exhaust as to the claim

10    against Villescaz here; after CSP-S-18-00043 was granted, the grievance that included the claim

11    against Villescaz (CSP-S-17-02714) was still being processed." ECF No. 47-2, pg. 9. Plaintiff

12    argues that the grievances "were not meant to exhaust and did not need[] to be exhausted[.]

13    [T]hey were filed to appeal cancellation of log no. CSP-5-17-02714 and assist in the exhaustion

14    of it which was haphazardly hindered by defendants . . ." ECF No. 51, pg. 11.

15         Here, the Court agrees with defendant insofar as the grievances did not satisfy

16    plaintiff's exhaustion requirements. As discussed above, grievance SOL-17-02714 contained

17    allegations of medical misconduct against Villescaz but was deemed untimely at the first level of

18    review. It was then reinstated by virtue of these appeals (RJD-A-17-07281/CSP-S-18-00043), and

19    a second-level determination of SOL-17-02714 found that Villescaz did not violate CDCR policy.

20    Therefore, RJD-A-17-07281/CSP-S-18-00043 simply reinstated SOL-17-02714 which, as

21    discussed above, did not exhaust plaintiff's administrative remedies.

22         6.     Grievance SAC-O-17-04402

23         It appears undisputed that:

24               Grievance log number SAC-O-17-04402 relates to another issue,
           and not the alleged conduct in this case. Grievance log number SAC-O-
25          17-04402 appealed the cancellation of grievance log number SOL-17-
           02526. (UMF No. 30.) Grievance log number SOL-17-02526, in turn,
26          sought to have certain charges from Williams's trust account removed.
           (UMF No. 31.) Grievance log number SOL-17-02526 did not mention
27          Defendant Villescaz or her alleged conduct. (UMF No. 32.) Accordingly,

28    ///

log number SAC-O-17-04402 did not exhaust as to the claims against Villescaz.

ECF No. 47-2, pg. 10.

Plaintiff concedes that "log no. SAC-O-17-04402 was mentioned in error and is irrelevant to this case." ECF No. 51, pg. 11. Therefore, it is undisputed that SAC-O-17-04402 did not satisfy plaintiff's exhaustion requirement.

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that defendant Villescaz's motion for summary judgement, ECF No. 47, be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 30, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE